No. 25-30664

No. 25-30664
consolidated with
No. 25-30690

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CHARLES RAY KEYS,
*Defendant-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA, CRIMINAL ACTION NO. 2:24-CR-00137-LMA HONORABLE LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

**BRIEF FOR APPELLANT CHARLES RAY KEYS**

**JONATHAN P. LEMANN (#26380)**
**COUHIG PARTNERS, LLC**
**1100 Poydras Street, Suite 3250**
**New Orleans, LA 70163**
**Telephone: (504) 588-1288**
**Facsimile: (504) 588-9750**
**Email: lemannjp@couhigpartners.com**
***Attorney for Charles Ray Keys***

No. 25-30664

No. 25-30664
consolidated with
No. 25-30690

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CHARLES RAY KEYS,
*Defendant-Appellant.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the persons having an interest in the outcome of this case are those listed below:

1. Charles Ray Keys, Defendant – Appellant;
2. Sarah Dawkins and Brittany Long, Assistant United States Attorneys, who represent the Government in the district court, and before this Court;
3. Jonathan P. Lemann, who represents appellant Keys in this Court and in the district court.
4. Arthur A. Lemann, IV — Counsel for Appellant in district court

This certificate is presented so that the judges of this Court may evaluate possible disqualification or recusal.

*/s/ Jonathan P. Lemann*
Jonathan P. Lemann
*Attorney for Appellant Keys*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure, and Local Court Rules 28.2.4 and 34.2, Appellant submits that oral argument would be of value to the Court in this case because the sufficiency of the evidence presented at trial with regard to the possession-based convictions is a highly fact intensive issue to be reviewed de novo and reference and discussion of specific facts will aid in the resolution of the present appeal.

This appeal presents significant questions regarding the Fourth Amendment adequacy of a search warrant affidavit prepared by a federal agent who misleadingly caused a state officer to swear out the warrant as an undisclosed surrogate. Appellant also believes oral argument may be helpful to the Court in deciding whether or not the trial court abused its discretion in instructing the jury and in admitting certain evidence. This is also a fact intensive argument that requires the Court to examine the entire record to determine both the abuse of discretion and the harm that resulted. As a result, Appellant feels oral argument would be helpful to the Court in analyzing the issue.

# TABLE OF CONTENTS

Certificate of Interested Persons ........................................................................ i

Statement Regarding Oral Argument ..................................................................... iii

Table of Contents ................................................................................................. iv

Table of Authorities ............................................................................................. viii

Jurisdictional Statement ........................................................................................ 1

A. The District Court's Jurisdiction ..................................................................... 1

Statement of Issues Presented for Review ............................................................. 2

Statement of the Case ............................................................................................ 4

A. Factual Background ......................................................................................... 4

B. Pre-Trial Proceedings ...................................................................................... 5

C. Trial ................................................................................................................. 6

D. Phase II – ACCA Bifurcated Proceeding ......................................................... 7

Summary of Argument .......................................................................................... 8

Argument ............................................................................................................. 11

I. The District Court Erred in Denying the Motion to Suppress Because the Search Warrant Affidavit Was Constitutionally Deficient .......................... 11

A. Standard of Review ......................................................................................... 11

B. The Affidavit was Materially False, and Stripped of Its Falsehoods, Lacks Probable Cause ..... 11

II. The Evidence Was Insufficient to Support the Convictions ..... 19

A. Standard of Review ..... 19

B. No Constructive Possession Was Proven ..... 20

C. No Hand-to-Hand Drug Transactions Were Observed; nor did Keys have exclusive use of the residence ..... 24

III. The District Court Erred in Admitting Agent Strickland's Unqualified and Improper Expert Testimony ..... 25

A. Standard of Review ..... 25

B. Agent Strickland's Expert Qualification Was Inadequate ..... 26

C. Strickland Improperly Characterized Unobserved Events as Drug Deals ..... 27

D. Strickland's testimony violated Rule 701 of the Federal Rules of Evidence ..... 28

IV. The Prosecution's Closing Argument Contained Improper and Prejudicial Remarks ..... 31

A. Standard of Review ..... 31

B. Specific Improper Remarks ..... 33

V. The 922(G)(1) Conviction is Unconstitutional Under the Second Amendment and the Commerce Clause ..... 35

A. Standard of Review ........ 35

B. Second Amendment Challenge ........ 35

C. Commerce Clause Challenge ........ 36

VI. The State Drug Predicates Cannot Support an ACCA Enhancement Because Louisiana's Pre-2015 R.S. 40:967 Pre-2015 Cocaine Offenses Are Not "Serious Drug Offenses" Under Federal Law ........ 37

A. Standard of Review ........ 37

B. *Brown v. United States* Requires Categorical Analysis of State Drug Schedules ........ 37

VII. The Bifurcated Jury Procedure for Determining ACCA Predicates Was Novel, Legally Suspect, and Prejudicial ........ 42

A. Description of the Procedure ........ 42

B. The Procedure Raises Significant Constitutional Concerns ........ 42

VIII. Improper Evidence was admitted during Phase II and Was Insufficient to Support the Verdict ........ 44

A. Standard of Review ........ 44

B. Admission of the Phase II Conviction Packet Evidence Over Foundation and Hearsay Objection ........ 45

IX The Sentence was Improper ........ 46

A. Standard of Review ..... 46

B. The Court's Sentence of 300 months was excessive ..... 46

X. Cumulative Error Deprived Mr. Keys of a Fair Trial ..... 48

Conclusion and Prayer49 ..... 49

Certificate of Service ..... 51

Certificate of Compliance with Rule 32(a) ..... 52

# TABLE OF AUTHORITIES

**Cases:**

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998) .................................... 43,44

*Apprendi v. New Jersey, 530 U.S. 466 (2000)* .................................................. 42,43,44

*Brown v. United States, 602 U.S. 101 (2024)* ...................................... 7,10,37,38,49,50

*Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019) .................................... 25

*Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993)* ............................. 26

*Erlinger v. United States,* 602 U.S. 821, 890, 144 S. Ct. 1840, 1884, 219 L. Ed. 2d 451 (2024) .............................................................................................................. 43

*Franks v. Delaware, 438 U.S. 154,155-56 (1978)* ................................................. 11,14

*Gall v. United States*, 552 U.S. 38, 39 (2007) ............................................................. 47

*Green v. United States*, 355 U.S. 184, 187, 78 S. Ct. 221, 223, 2 L. Ed. 2d 199 (1957) .................................................................................................................... 42

*Hall v. United States*, 419 F.2d 582, 583 (5th Cir. 1969) ............................................ 34

*Illinois v. Gates, 462 U.S. 213,238 (1983)* ................................................................. 12

*Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 2333, 76 L. Ed. 2d 527 (1983) .................................................................................................................... 14

*Jackson v. Virginia, 443 U.S. 307,319 (1979)* ............................................................ 19

*Johnson v. United States*, 576 U.S. 591, 595-96, 135 S.Ct. 2551, 192 L.Ed.2d

569 (2015)....................................................................................................38

*Puckett v. United States*, 556 U.S. 129, 135 (2009)....................................................26

*Mathis v. United States, 579 U.S. 500, 505 (2016)*....................................................37

*Scarborough v. United States* 431 U.S. 563, 575 (1977)............................................36

*Shular v. United States*, 589 U.S. 154, 158, 140 S.Ct. 779, 206 L.Ed.2d 81 (2020)..........................................................................................................38,41

*State v. Dawson*, 340 Conn. 136, 263 A.3d 779 (2021) .............................................23

*States v. Taylor*, 482 F.3d 315, 318 (5th Cir. 2007). ROA.1364-1365........................44

*United States v. Alexander*, 782 F. App'x 304, 307-08 (5th Cir. 2019).......................20

*United States v. Anchondo-Sandoval*, 910 F.2d 1234, 1237 (5th Cir. 1990)...............32

*United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)..........................................................................................................38

*United States v. Beaulieu*, 973 F.3d 354, 360 (5th Cir. 2020) ....................................32

*United States v. Belanger,* 890 F.3d 13, 25 (1st Cir. 2018).........................................27

*United States v. Bermea*, 30 F. 3d 1539 (5th Cir. 1994) ..............................................20

*United States* v. *Beverly*, 750 F.2d 34, 35 (6th Cir. 1984) ...........................................23

*United States v. Bolton*, 908 F.3d 75, 94 (5th Cir. 2018)............................................32

*United States v. Bonner*, 159 F.4th 338 (5th Cir. 2025)..............................................36

*United States v. Bowen*, 818 F.3d 179, 191 (5th Cir. 2016)........................................35

*United States v. Burton*, 126 F. 3d 666 (5th Cir. 1997)...............................................20

*United States v. Candia*, 454 F.3d 468 (5th Cir. 2006)...............................................49

*United States v. Casilla, 20 F.3d 600, 604(5th Cir. 1994)* ......................................26,28

*United States v. Chavira,* 209 F.3d 720 (5th Cir. 2000)............................................. 11

*United States v. Coleman*, 540 F. Supp. 3d 596, 609 (S.D. Miss. 2021)..................... 17

*United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024) ........................................... 36

*United States v. De Leon*, 170 F.3d 494, 497 (5th Cir. 1999)...................................... 22

*United States v. Delgado, 672 F.3d 320, 336 (5th Cir. 2012)*...................................... 48

*United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024) ................................................. 35

*United States v. Dominguez-Benitez, 542 U.S. 74 (2004)* .......................................... 36

*United States v. Espinoza*, 481 F.2d 553, 555 (5th Cir. 1973).................................... 46

*United States v. Fernandez*, 436 F.Supp.2d 983, 989 (E.D.Wis.2006) ....................... 47

*United States v. Freeman,* 730 F.3d 590, 595 (6th Cir.2013) ..................................... 29

*United States v. Garcia*, 413 F.3d 201, 211 (2nd Cir. 2005) ........................................ 30

*United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993)* ....................................... 31

*United States v. Garza*, 608 F.2d 659, 662 (5th Cir. 1979)......................................... 34

*United States v. Griffith, 118 F.3d 318,321 (5th Cir. 1997)*........................................ 20

*United States v. Haines*, 803 F.3d 713, 733 (5th Cir. 2015) ............................29,30,31

*United States v. Hayles*, 471 F.2d 788, 793 (5th Cir. 1973) ....................................... 14

*United States v. Jackson*, 55 F.4th 846, 855 (11th Cir. 2022), *aff'd sub nom.*............. 38

*United States v. Johnson,* 381 F.3d 506, 511 (5th Cir. 2004) .................................... 24

*United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025) ........................................ 35,36

*United States v. Leal, 74 F.3d 600,603 (5th Cir. 1996)* ......................................... 20,21

*United States v. Leon*, 468 U.S. 897 (1984) ............................................................. 19

*United States v. Masha*, 990 F.3d 436, 445 (5th Cir. 2021) ....................................... 29

*United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008) ...................................... 26

*United States v. Mergerson,* 4 F.3d 337, 349 (5th Cir.), *cert. denied,* 510 U.S. 1198, 114 S.Ct. 1310, 127 L.Ed.2d 660 (1994) ................................................................... 22

*United States v. Minor*, 121 F.4th 1085, 1093 (5th Cir. 2024) .................................. 38

*United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015). ...................................... 11

*United States v. Narviz-Guerra, 148 F.3d 530,536 (5th Cir. 1998)* ........................... 12

*United States v. Onick*, 889 F.2d 1425, 1429–30 (5th Cir. 1989) ............................... 22

*United States v. Ortega Reyna*, 148 F. 3d 540 (5th Cir. 1998) ................................... 20

*United States v. Oti*, 872 F.3d 678, 691 (5th Cir. 2017) ............................................. 27

*United States v. Perez*, 46 F.4th 691, 700 (8th Cir. 2022) ...................................... 39,40

*United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005) ................................... 25

*United States v. Ramirez-Velasquez*, 322 F.3d 868, 874 (5th Cir. 2023) .................... 35

*United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997) ....................................... 29

*United States v. Rodriguez-Leon*, 756 F.3d 422, 433 (5th Cir. 2014) ........................ 35

*United States v. Seekins*, No. 21-10556, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022)....................36

*United States v. Steele*, 2024 WL 1877072 (E.D. La. 2024)....................7,10

*United States v. Steele, No. CR-22-195, 2024 WL 1877072 at 1* (E.D. La. Apr. 23, 2024)*....................39

*United States v. Taylor, 482 F.3d 315, 318 (5th Cir. 2007)*....................19

*United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. 1981)....................46

*United States v. Tobias*, 662 F.2d 381, 409 (5th Cir. 1980)....................46

*United States v. Toure*, 965 F.3d 393, 399 (5th Cir. 2020)....................35

*United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)....................14

*United States v. Williams*, 48 F.4th 1125, 1142 (10th Cir. 2022)....................38,40

*United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008)....................25,44

*United States v. Young*, 470 U.S. 1, 18-19 (1985)....................35

*U.S. v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978)....................35

*U.S. v. York,* 572 F.3d 415, 426 (7th. Cir. 2009)....................30

**<u>Statutes and Rules:</u>**

18 U.S.C. § 841(a)(1)....................6

18 U.S.C. § 922(g)....................37,47

18 U.S.C. § 922(g)(1)....................2,6,10,35,38

18 U.S.C. § 924(c)....................7,9,49

18 U.S.C. § 924(c)(1) ........................................................................................ 6,21

18 U.S.C. § 924(e)(1) (Armed Career Criminal Act) ................................passim 3,6,7

18 U.S.C. § 924(e)(2)(A)(ii) ............................................................................37,38

18 U.S.C. § 3231 ........................................................................................................ 1

18 U.S. Code §3553 ..............................................................................................46,47

18 U.S.C. Section 3553(a)(6) ...................................................................................46

28 U.S.C. § 1291 ........................................................................................................ 1

La. R.S. 40:967 ......................................................................... passim 3,7,10,39,50

Local Court Rules 28.2.4 ..........................................................................................iii

Local Court Rules 34.2 ..............................................................................................iii

Fed. R. Evid. 602 ...................................................................................................29,40

Federal Rule of Evidence 701 ............................................................................28,29,30

Fed. R. Evid. 702 .................................................................................................... 9,26

Fed. R. Crim. P. 29 ................................................................................................... 14

Fed. R. App. P. 4(b) ................................................................................................... 1

Rule 4 of the Federal Rules of Appellate procedure.................................................... 1

Rule 34(a) of the Federal Rules of Appellate Procedure……………………………iii

United States Constitution Amendment IV ………………………………………....11

# JURISDICTIONAL STATEMENT

## A. The District Court's Jurisdiction

The District Court had subject matter jurisdiction over this federal criminal proceeding pursuant to 18 U.S.C. § 3231. Appellant Charles Ray Keys invokes the jurisdiction of this Court pursuant to the provisions of Rule 4 of the Federal Rules of Appellate procedure and 28 U.S.C. §1291 as this is a direct appeal of a final criminal conviction from the District Court.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**POINT OF ERROR NUMBER ONE.** The district court erred in denying a motion to suppress evidence seized pursuant to a search warrant when the supporting affidavit was drafted by a federal agent, who used a state officer as a nominal affiant to access a state magistrate, and contained material misstatements.

**POINT OF ERROR NUMBER TWO.** The evidence was insufficient to support Mr. Keys's convictions for possession with intent to distribute cocaine and fentanyl (Count 1) and felon in possession of a firearm (Count 3) when: (a) no hand-to-hand drug transactions were ever observed; and (b) the evidence of constructive possession rested entirely on inference.

**POINT OF ERROR NUMBER THREE.** Appellant was prejudiced by the testimony of the lead investigating officer that violated the Rules of Evidence in numerous respects.

**POINT OF ERROR NUMBER FOUR.** The prosecution's closing argument contained prejudicial improper remarks that denied Mr. Keys a fair trial.

**POINT OF ERROR NUMBER FIVE.** The section 922(G)(1) Conviction is Unconstitutional under the Second Amendment and the Commerce Clause.

**POINT OF ERROR NUMBER SIX**. The District Court erred in allowing the Government to present, and the jury to find, that Mr. Keys's three pre-2015 Louisiana

R.S. 40:967 cocaine convictions qualify as "serious drug offenses" under 18 U.S.C. § 924(e)(1).

**POINT OF ERROR NUMBER SEVEN.** The bifurcated trial procedure employed by the District Court to submit the ACCA sentencing predicates to the jury — a procedure of apparent first impression in this Circuit — was constitutionally and legally unsound.

**POINT OF ERROR NUMBER EIGHT.** Improper evidence was admitted at Phase Two.

**POINT OF ERROR NUMBER NINE.** The trial court abused its discretion by sentencing Appellant at the top of the guideline range as reflected by the sentence imposed being significantly higher than necessary to achieve societal aims.

**POINT OF ERROR NUMBER TEN.** Cumulative errors require reversal.

# STATEMENT OF THE CASE

## A. Factual Background

On January 13, 2024, a child tragically died of a drug overdose at 4757 Tulip Street, New Orleans, Louisiana. ROA.25-30664.417. FBI Special Agent Matthew Strickland, assigned to a Violent Crimes and Interdiction Task Force ("V-CAIT"), thereafter began surveilling the Tulip Street address. ROA.779-781. Agent Strickland authored the probable cause section of a search warrant affidavit but arranged for New Orleans Police Department Detective Alden Moton — a state officer — to present it to a state court magistrate and obtain the warrant. ROA.829. Det. Moton personally observed nothing and conducted no independent investigation; virtually all information in the affidavit came from Strickland. ROA.737. Yet, Det. Moton, at Agent Strickland's bidding, attested to all of the information in the affidavit as though it was his own personal knowledge and experience. ROA.737-740.

The affidavit erroneously stated that the residence "belonged to" Mr. Keys; when, in fact, the Orleans Parish Assessor's records showed no such ownership. ROA.775-777; ROA.1700-1703. Agent Strickland later conceded this was a mistake, acknowledging that Mr. Keys merely appeared to reside there. ROA.776. The affidavit also stated that phone records confirmed late-night call activity, but Strickland later admitted this was inaccurate. ROA.803. A pole camera was placed on April 1, 2024,

and operated for 17 days. During the entire surveillance period, no hand-to-hand drug transaction was ever captured on video. ROA.1267.

Law enforcement executed the search warrant on April 18, 2024. Agents claimed to find Mr. Keys in a bedroom at approximately 9:30 a.m. Also in the room was Iris Meyers, the mother of the deceased child. The residence had at least three bedrooms and items of property appearing to belong to multiple occupants. ROA.823-824. Recovered from the bedroom were a satchel containing cocaine and fentanyl, five firearms, and cash. Mr. Keys's fingerprints were identified on no firearm. DNA testing yielded only one "inclusion" result on one weapon, which the DNA analyst explained meant only that Mr. Keys could not be excluded as a potential contributor, not that he was a definitive match, and multiple profiles were detected on that weapon. ROA.1201-1203; ROA.1208-1209; ROA.1213-1221.

**B. Pre-Trial Proceedings**

On March 10, 2025, the District Court held an evidentiary hearing on a motion to suppress. ROA.729, et seq. The defense called both Det. Moton and Agent Strickland. The testimony established that Agent Strickland drafted the affidavit, supplied all substantive information, and had Det. Moton present it to a state magistrate because, as Strickland testified, he had "never done that before as a federal agent, sworn out a state warrant, or ever heard of anyone in my task force doing that." ROA.781. The court denied the motion. ROA.362.

The government charged Mr. Keys by superseding indictment with: Count 1 — possession with intent to distribute cocaine and fentanyl, 18 U.S.C. § 841(a)(1); Count 2 — possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1); and Count 3 — felon in possession of a firearm, 18 U.S.C. § 922(g)(1). The superseding indictment also contained a sentencing allegation under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), alleging three prior Louisiana serious drug offense convictions. ROA.481-485.

**C. Trial**

Trial commenced May 13, 2025. The Government's primary witness was Agent Strickland, who was the sole witness on Day 1 and testified at length about pole camera surveillance, the search, and — critically — offered expert opinion that the observed foot traffic constituted drug transactions. ROA.991-1113.

On Day 2, the Government called: (1) Thuy-Lihn Nguyen, a forensic chemist who identified cocaine and fentanyl; (2) Special Agent Jonathan Fretwell, who testified regarding firearms and interstate nexus; and (3) Rachel Clawson, a DNA analyst who testified that Mr. Keys's DNA was an "inclusion" on one of five tested firearms and inconclusive on another. Defense counsel emphasized in closing that no hand-to-hand transactions were observed, that five cell phones found at the scene were never forensically analyzed, that there was no informant or buyer testimony, and that the only "evidence" of drug dealing was Strickland's opinion. ROA.1144-1222.

At the close of the defense's case, defense counsel moved for judgment of acquittal under Rule 29. The court denied the motion. ROA.1230. The jury acquitted on Count 2 (§ 924(c)) but convicted on Counts 1 and 3. ROA.1309-1311.

**D. Phase II — ACCA Bifurcated Proceeding**

Following the Count 1 and Count 3 convictions, the District Court conducted a Phase II proceeding in which the same jury was asked to determine whether the Government had proven, beyond a reasonable doubt, that Mr. Keys had three prior serious drug offense convictions under § 924(e)(1). ROA.1311-1313. Before the Phase II began, defense counsel moved to dismiss the ACCA allegation on the ground that pre-2015 Louisiana cocaine convictions under R.S. 40:967 cannot serve as proper ACCA predicates following *Brown v. United States*, 602 U.S. 101 (2024), because Louisiana's definition of cocaine no longer matched the federal definition. Counsel also cited *United States v. Steele*, 2024 WL 1877072 (E.D. La. 2024). ROA.1316-1318.

The Government's sole Phase II witness was fingerprint examiner Steven Olivotto, who testified that he was able to match Mr. Keys's fingerprints to only two of the three alleged prior conviction records. For the 1999 conviction (Case No. 401-464), he found no fingerprints in the conviction packet and could not obtain an AFIS record, relying instead on FBI numbers contained in documents to assert identity. ROA.1336-1337; ROA.1359-1360. The jury returned a Phase II verdict finding the three predicates proven. ROA.1372.

## SUMMARY OF ARGUMENT

This case presents a convergence of constitutional and evidentiary errors, any one of which — and certainly all of them taken together — requires reversal.

First, the search warrant that launched this prosecution was born of a faulty affidavit. A federal agent who could not or would not swear out a federal warrant instead drafted the probable cause statement and used a state officer as a nominal affiant to access a state magistrate. The affidavit contained material inaccuracies: it misrepresented that Mr. Keys owned the residence (he did not), and it inaccurately characterized cell phone records as confirming late-night narcotics activity (they did not). The agent acknowledged both errors at the suppression hearing. Without these inaccuracies, the remaining allegations — that people visited the property for short periods over 17 days — fail to establish probable cause for a search. The good-faith exception cannot save a warrant where the agent who wrote the affidavit knew or should have known it contained material falsehoods. More fundamentally, this Court should not sanction the practice of obtaining warrants from sworn testimony by an affiant that is misrepresenting his personal knowledge of the facts to which he is attesting.

Second, the evidence at trial was insufficient. This was a purely circumstantial case built on proximity and inference. The government conceded at closing that no

hand-to-hand drug transaction was ever observed. There was no buyer, no informant, no wiretap, and no cell phone analysis despite five phones being seized. Mr. Keys was found asleep in a home with multiple occupants. His fingerprints appeared on none of five weapons nor the satchel with the drugs. The jury acquitted on § 924(c), signaling doubt about the nexus between the drugs and the guns, which necessarily infects the constructive possession verdicts on Counts 1 and 3.

Third, Agent Strickland's opinions about drug trafficking were improperly admitted. He was the government's principal witness and provided the crucial inference — repeatedly — that ordinary foot traffic constituted drug sales. Yet his qualifications to offer such expert opinion were never adequately established under Rule 702. He is a line agent with five years' experience who had been on the task force for that entire period. He was led by the trial judge at certain points and testified beyond any expertise. ROA.1047.

Fourth, the prosecution's closing argument contained improper and prejudicial remarks that bolstered the Government's case by referencing facts not in evidence and by appealing to the jury's fear of drug crime in ways that diverted attention from the actual insufficiency of the proof.

Sixth, the ACCA enhancement is legally infirm. After *Brown v. United States*, a state drug offense qualifies as an ACCA predicate only if the state's drug schedule matches the federal schedule at the time of conviction. Louisiana's cocaine statute, R.S. 40:967, was amended in 2015 and 2016 to include substances not covered by the federal Controlled Substances Act. Mr. Keys's three alleged prior convictions — from 1997, 1999, and 2011 — all pre-date those amendments and thus under the categorical approach cannot reliably be said to involve a controlled substance as defined by federal law. Judge Morgan reached this exact conclusion in *Steele*. Moreover, Mr. Keys has already been sentenced as a habitual offender on the predicate charges at issue and the present ACCA sentence constitutes Double Jeopardy. Also, the section 922(G)(1) Conviction is unconstitutional under the Second Amendment and the Commerce Clause.

Additionally, the bifurcated procedure used here — in which the same jury that convicted Mr. Keys on the underlying offense was immediately retained to serve as fact-finder on the ACCA sentencing allegation — was prejudicial. Submitting sentencing factors to the same jury that just rendered a guilty verdict raises serious concerns about prejudice, the integrity of the *Apprendi* line, and whether the Constitution permits this hybrid procedure. It also involved the introduction of improper evidence.

Lastly, Mr. Keys' sentence was both faulty and impermissibly excessive.

Taken together, these errors were not harmless. Individually, several provide independent grounds for reversal. The cumulative weight of all of them unquestionably deprived Mr. Keys of the fair trial to which he was entitled.

## THE ARGUMENT

### I. THE DISTRICT COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE THE SEARCH WARRANT AFFIDAVIT WAS CONSTITUTIONALLY DEFICIENT.

#### A. Standard of Review

This Court reviews a district court's denial of a motion to suppress de novo as to legal conclusions and for clear error as to factual findings. *United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015). Whether probable cause supported a warrant is a mixed question reviewed de novo. *See United States v. Chavira,* 209 F.3d 720 (5th Cir. 2000).

#### B. The Affidavit Was Materially False and, Stripped of Its Falsehoods, Lacks Probable Cause

The Fourth Amendment requires that a search warrant issue only "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. A defendant is entitled to a *Franks* hearing, and to suppression, when he shows (1) an affiant made a deliberately false or recklessly misleading statement in connection with an application for a search warrant, and (2) the remaining truthful allegations are insufficient to establish probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Probable

cause is assessed under the totality of circumstances, *Illinois v. Gates*, 462 U.S. 213, 238 (1983), and requires more than "good-faith suspicion." *United States v. Narviz-Guerra*, 148 F.3d 530, 536 (5th Cir. 1998).

The Court denied the motion to suppress by Order and Reasons of April 7, 2025, concluding that no misrepresentations had occurred. Despite acknowledging the falsity of statements included in the affidavit, the Court was comfortable that “these false statements were not made with intent to mislead or with reckless disregard to any misleading effect.” ROA.381. The Court chalked it up to in its view an innocent but “questionable belief” that the warrant had to be written from the point of view of a state officer. ROA.381.

The unusual arrangement here — a federal agent using a state officer as a nominal affiant to circumvent the requirements for a federal warrant — itself warranted suppression.[1] A warrant is to be premised on truthful statements. When the affiant is attesting to the first-hand experience of another as though it was the affiant’s own, the entirety of the affidavit is a falsehood.

The affidavit both in terms of drafting and the referenced investigating was the work of FBI Agent Strickland. See ROA.737 (confirmed by Agent Strickland at

[1] The use of this arrangement to access a more permissive state magistrate raises serious concerns about manipulation of the warrant process that this Court should not condone. Agent Strickland admitted he had "never done that before as a federal agent, sworn out a state warrant, or ever heard of anyone in my task force doing that." ROA.781.

ROA.779); see also ROA.84-87, ROA.1700-1703 for the affidavit. Moton initially testified that he reviewed none of the surveillance and did not view the residence prior to executing the warrant. ROA.735, ROA.737. Strickland is the one who told him Keys "had" the residence. ROA.739. Moton did not speak to the NOPD about interviews she had with Defendant Keys or his alleged girlfriend Iris Meyers. ROA.744.

Moton did not listen to a recorded conversation mentioned in the affidavit and admitted he did not locate the call. ROA.745-746. Rather, the conversation was "communicated" to him. ROA.747. He did not develop a phone number, and he did not review phone records. ROA.750. The affidavit states Moton learned Meyers was a potential narcotics user but Moton admitted that Strickland learned this. ROA.747.

All of these admissions, of course, are contrary to the representations in the affidavit that all of the factual representations of the Probable Cause section are from the point of view of and purport to be the actual knowledge of Detective Moton. ROA.85:

> "Moton learned the decedent was found unresponsive,…
>
> Moton learned the residence belonged to Charles Ray Keys…
>
> Moton had the opportunity to locate a lawfully recorded telephone conversation…
>
> Motion learned [from a review of the interview of Keys and Meyers] that Meyers was a potential narcotics user…
>
> Moton reviewed the criminal histories…

Moton discovered that Keys had an extensive criminal history…

Moton learned that Meyers is currently wanted….

Moton developed a phone number for Keys and reviewed his call records the night the decedent died…

Moton…. elected to conduct surveillance of Keys and Meyers….” ROA.84-87.

Yet, none of these statements are true. That fact flies in the face of the constitutional safeguards premised on truthfulness that the Supreme Court has espoused in *Franks* and mandated the suppression of the evidence at issue.[2]

Sufficient information must be presented to the magistrate to allow that official to determine probable cause. *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 2333, 76 L. Ed. 2d 527 (1983). The magistrate's action cannot be a mere ratification of the bare conclusions of others. *Id.* There is no way for an issuing judge to properly scrutinize the allegations of an affidavit and the trustworthiness of the affiant when the judge is not even informed who the affiant is and who is actually making the observations and investigations.

---

[2] The defense acknowledges that an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, and even that the information contained in the affidavit need not be based on the personal knowledge of the affiant, when based on the personal observations of a fellow law enforcement official engaged in the same investigation so as to "be presumed reliable." See e.g., *United States v. Hayles*, 471 F.2d 788, 793 (5th Cir. 1973); *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). But the present situation goes far beyond that. The affidavit at issue here does not suggest it is "based on the personal observations of a fellow law enforcement official." In fact, it barely mentions its true author, Agent Strickland. Rather, it misrepresents that Moton is the author and that Moton had the personal observations and personally performed the described investigative acts.

With all due respect to the Trial Court's conclusion that the falsification was due to a "questionable" misbelief, Strickland's mistaken belief of procedure does not change the fact that he and Moton did lie to the issuing judge. They knew that Moton did not observe or investigate as indicated in the affidavit and they submitted it to the issuing magistrate anyway.

Moreover, the affidavit here contained at minimum three material misstatements. First, it misstated ownership of the Residence. The affidavit stated that "Detective Moton learned the residence belonged to Charles Ray Keys." ROA.777. In fact, the Orleans Parish Assessor's records — attached as Defense Exhibit — show the property was owned by "Wesby Babette, et al." from Fort Worth, Texas, and Kenneth Haynes. ROA.119. Agent Strickland admitted he never checked assessor records and conceded at the suppression hearing that "belonged" was "not the best term" and that all he knew was that Mr. Keys appeared to reside there. ROA.777. He was not aware of Keys' lien on the property, or the indicia of construction activity as a result of this filed construction contract. ROA.783; ROA.121. Strickland did not consider potential alternative reasons for Keys' accessing the property- such as construction- to be relevant to investigate or to report this to the Judge issuing the warrant. ROA.784. Detective Moton similarly admitted he never independently verified ownership. ROA.737. An affidavit that flatly misrepresents the subject's legal connection to the

premises contains exactly the type of material misstatement that triggers the *Franks* analysis.

Secondly, misstatements exist about a pivotal "located" phone call. Agent Strickland acknowledged that the story mentioned on the call about the child going to the hospital and then coming home and passing away was not what actually happened. ROA.792. He acknowledged that the female on the call, who is not known to him, suggested during the call many differing and untrue versions of what happened were in the community. ROA.793. Strickland defended his omission of this expressed confusion by quoting his statement in the affidavit that "a story developed" to preface his unequivocal report to the issuing Judge that a source reported that a five year old was poisoned by narcotics at Mr. Keys' house. ROA.794.

Plainly, a review of the call transcript, reveals a much different conversation actually took place- one in which the unknown female speaker suggests a virus may have killed the baby, and that people were suggesting the decedent was taken to the hospital first (which was wrong). ROA.1738-1744[3]. The female goes on to say "They had all kinds of stories talkin' about they had some dope on the table, that little boy stuck his fingers in it and put it in his mouth….[and] That shit ain't even sound right." ROA.1741-1742. The fact that the female expresses multiple theories are spreading and then expresses doubt about the one involving narcotics is not mentioned in

[3] This Exhibit is part of the consolidated record 25-30690.

Strickland's affidavit. Neither is the female's suggestion that Mr. Keys took care of the boy and that she hopes Keys does not get in trouble over the tragedy.

The affidavit also misled the judge by withholding the fact that the call was a jail house call. A proper assessment of the reliability of this information was impossible under that circumstance. *United States v. Coleman*, 540 F. Supp. 3d 596, 609 (S.D. Miss. 2021) (The informant's past reliability, which is undisputed, is not enough to overcome the affidavit's lack of factual basis for the one-sentence statement supporting why Coleman was in possession of firearms. "The totality of the circumstances demonstrates that the affidavit is bare bones.").

The second major fact supporting probable cause was the explanation as to why no contraband was uncovered on January 14, 2024, when the same residence was searched. Strickland theorized that Keys had time to clean the place, which theory was predicated on the phone records which contradicted Keys' statements that he went to bed around 9 pm the night before officials responded to the tragic death. But this was premised on the third key misstatement of Strickland which related to Cell Phone records and the theory that Mr. Keys cleaned the residence prior to police investigating the 911 call concerning the deceased child. The affidavit recited that administrative subpoena returns from T-Mobile confirmed incoming and outgoing phone calls at the residence "well into the early hours of the morning" — suggesting 24-hour drug trade activity. Agent Strickland acknowledged on cross-examination at the suppression

hearing that this conclusion was incorrect, and that he did not have all of the necessary T-Mobile records when he wrote the probable cause section. ROA.830-31. Agent Strickland acknowledged he thought it relevant to include that the house had been cleaned of contraband when it was searched in January in response to the five year old's death. Hearing transcript. ROA.801. He acknowledged that the key piece of evidence for his theory that there was time to clean was the discrepancy between what Keys told responding officers about his bedtime and outgoing calls from phone records obtained from T-Mobile. ROA.801. Agent Strickland explained that which the government disclosed to the Court and the undersigned the Friday preceding this hearing-- that he was mistaken about the assertion in the affidavit that outgoing calls were reflected in Keys' phone records the night before the emergency call related to the five year old's death.

Stripped of these misstatements, the affidavit offered only: (a) a child died of a drug overdose at the residence in January 2024; (b) Mr. Keys was observed at the residence; and (c) general foot traffic was observed over 17 days of surveillance. No hand-to-hand transaction was ever observed. No identified buyer was named. The "foot traffic" described in the affidavit — people arriving briefly and departing — is consistent with any number of innocent activities. In a densely populated New Orleans neighborhood, vehicles stopping momentarily at a corner residence proves nothing.

Short-duration visits alone, without more, do not establish probable cause for drug trafficking.

The good-faith exception under *United States v. Leon*, 468 U.S. 897 (1984), cannot save this warrant. The good-faith exception does not apply when the affiant provided information that he knew or should have known was false. *Leon*, 468 U.S. at 923. Agent Strickland drafted the entire probable cause section, knew he had not verified property ownership, knew he mischaracterized a phone conversion involving people with knowledge of Keys and the decedent, and knew he was offering an explanation of a cover-up based on an incorrect reading of phone records he had received. Moreover, the state officer who signed the affidavit had no independent knowledge of any facts therein. This is precisely the situation where *Leon* provides no shelter. The district court erred in denying suppression. Without the illegally obtained evidence, the government's entire case collapses. Reversal is required.

## II. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.

### A. Standard of Review

This Court reviews de novo the denial of a Rule 29 motion for acquittal. *United States v. Taylor*, 482 F.3d 315, 318 (5th Cir. 2007). The evidence is sufficient only if a rational trier of fact could find each essential element beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court reviews sufficiency as to each

count separately. *United States v. Alexander*, 782 F. App'x 304, 307-08 (5th Cir. 2019). The court need not find that the evidence excludes every reasonable inference of innocence, or that the evidence is inconsistent with every conclusion except guilt. *United States v. Burton*, 126 F. 3d 666 (5th Cir. 1997); *United States v. Bermea*, 30 F. 3d 1539 (5th Cir. 1994). However, if the evidence tends to give equal or nearly equal circumstantial support to guilt and to innocence, reversal is required. *United States v. Ortega Reyna*, 148 F. 3d 540 (5th Cir. 1998).

**B. No Constructive Possession Was Proven**

Counts 1 and 3 both required the Government to prove that Mr. Keys possessed the drugs and the firearms, respectively. Because no witness ever saw Mr. Keys handle any drugs or any gun, the Government was limited to constructive possession. Constructive possession requires proof that the defendant knowingly exercised dominion and control over the item. *United States v. Griffith*, 118 F.3d 318, 321 (5th Cir. 1997). Proximity alone is insufficient. *United States v. Leal*, 74 F.3d 600, 603 (5th Cir. 1996).

The Government's case on constructive possession rested on the following: (1) Mr. Keys was found sleeping in a bedroom of the residence; (2) a satchel containing drugs was on or near the bed; (3) five firearms were found in or near that bedroom; and (4) Agent Strickland's opinion that someone in the residence had been dealing drugs based on surveillance footage. Each component is legally insufficient.

The residence was multi-occupant. Iris Meyers was present in the same bedroom. Evidence was seized from multiple rooms. The satchel was on video around Mr. Keys's neck during surveillance, but the government never proved the satchel found the morning of the arrest — at 9:30 a.m. in the bedroom — was continuously in Mr. Keys's actual possession. The satchel could have been placed there by anyone in the residence. No fingerprints linked Mr. Keys to the satchel itself. Mere presence in a dwelling where contraband is found, without more, is insufficient to establish constructive possession. *United States v. Leal*, 74 F.3d at 603.

The five firearms present an even weaker case. They were found in various locations in the bedroom. Mr. Keys's fingerprints were not on any of the five weapons recovered. DNA testing — which the government chose to conduct on only two of the five — produced an inclusion on one firearm (meaning only that Mr. Keys could not be excluded as a potential contributor) and an inconclusive result on the other. Multiple DNA profiles were present on both tested weapons, consistent with any number of handlers. ROA.1257-1259. The Government's DNA expert acknowledged DNA transfer can occur in multiple ways, and there was proof of sloppy handling of the evidence by the officers executing the warrant. ROA.1259.

The jury itself seemed to recognize the weakness of the firearms-plus-drugs nexus: it acquitted on Count 2 (§ 924(c)), which required possession of a firearm in

furtherance of drug trafficking. An acquittal on that count undermines the government's theory that Mr. Keys knowingly possessed all the weapons found in the room.

Control over the place in which contraband or an illegal item is discovered is insufficient by itself in establishing constructive possession when there is joint occupancy of a place. *United States v. De Leon*, 170 F.3d 494, 497 (5th Cir. 1999); *United States v. Mergerson,* 4 F.3d 337, 349 (5th Cir.), *cert. denied,* 510 U.S. 1198, 114 S.Ct. 1310, 127 L.Ed.2d 660 (1994). In *United States v. Onick*, 889 F.2d 1425, 1429–30 (5th Cir. 1989) the Court found that the evidence does not show that Onick *actually* possessed the drugs:

> "She did not carry drugs. The room in which she sat contained no drugs nor drug paraphernalia. No one testified that Onick possessed any drugs when the police searched the house or at any other time. Nor does the evidence demonstrate that Onick *constructively* possessed the drugs. At most, the evidence permits us to infer that Onick associated with Tolliver, visited Tolliver for the night, knew that the house contained a safe, and knew the safe combination." *Id.*

As such, and as in this case, a reasonable jury could not conclude that the exercise of "dominion and control over the premises or the drugs themselves even if it drew these inferences from the evidence." For the jury "to impute dominion or control to Onick, it must have *speculated* Onick into a conviction." *Id.*

Here again no government fingerprint expert testified that Mr. Keys's fingerprints were found on any of the five firearms. The prosecution argued the satchel video as circumstantial evidence, but the satchel itself yielded no fingerprint

identification. A single inconclusive DNA "inclusion" on one of five firearms falls far short of establishing constructive possession beyond a reasonable doubt of all five. DNA inclusions, particularly where multiple profiles are present, are insufficient standing alone to prove constructive possession.

In *Beverly*, for instance, a police officer executed a search warrant on the apartment of a third person and, in so doing, found the defendant and another man in the kitchen. *United States* v. *Beverly*, 750 F.2d 34, 35 (6th Cir. 1984). Between the two men was a waste basket containing two guns, one of which had the defendant's fingerprint on it. *Id*. The court determined that this evidence was insufficient to support a finding of constructive possession, stating that the evidence “establishes only that [the defendant] was in the kitchen of [the third party's] residence, that [the defendant] was standing close to a waste basket [that] contained two guns, and that [the defendant] had at some point touched one of the guns,” which fell short of establishing constructive possession. *Id*., 37. In a similar state court case, evidence showing that defendant was not eliminated as a contributor to DNA profile found on gun and ammunition was not by itself sufficient to show constructive possession in *State v. Dawson*, 340 Conn. 136, 263 A.3d 779 (2021). Here too the evidence was insufficient to result in convictions.

### C. No Hand-to-Hand Drug Transactions Were Observed; nor did Keys have exclusive use of the residence.

The Government placed 17 days of continuous pole camera surveillance before the jury covering a corner residence in New Orleans. Over that entire period, not a single hand-to-hand drug transaction was observed. The prosecutor acknowledged this in closing argument. ROA.1268. Rather than video of actual drug sales, the jury was presented with Agent Strickland's opinion that the unobserved transactions occurring off-camera must have been drug sales.

This was an impermissible stacking of inferences. The jury was asked to infer: (1) that foot traffic observed entering the property off-camera constituted drug purchases; (2) that Mr. Keys was conducting those hypothetical purchases; (3) that drugs found in the bedroom were therefore possessed by Mr. Keys with intent to distribute. Each link in this inferential chain is speculative. The government presented no buyer, no seller, no audio recording, no text messages, no financial analysis of cash flows, and no cell phone data — despite seizing cell phones from the residence. An inference stacked upon an inference stacked upon another inference does not equal proof beyond a reasonable doubt. *See United States v. Johnson,* 381 F.3d 506, 511 (5th Cir. 2004).

Thus, evidence in this case established that Mr. Keys did not own 4757 Tulip St. ROA.1060-1061. Agent Strickland further acknowledged that he did not observe nor

did the surveillance reveal any hand to hand transactions. Strickland acknowledged that he observed construction going on at the residence. The surveillance in fact depicted much construction activity, and Strickland acknowledged that not all of the individuals seen on the videos were suspected drug purchasers or traffickers. Keys was not found with drugs or firearms on his person. Rather drugs and firearms were found in the residence upon execution of the warrant. Keys was in the residence as well, but this falls well short of the necessary proof of beyond a reasonable doubt as to his possession of the firearms and intent to distribute narcotics.

## III. THE DISTRICT COURT ERRED IN ADMITTING AGENT STRICKLAND'S UNQUALIFIED AND IMPROPER EXPERT TESTIMONY.

### A. Standard of Review

This Court reviews a district court's admission of expert testimony for abuse of discretion. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019). Notably, this Court's "review of evidentiary rulings in criminal trials is heightened." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008)(citations omitted). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id*. (quoting *United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005)). Evidentiary rulings are also subject to harmless-error analysis. "An error is harmless when it does not affect the substantial rights of a

party." *United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008). "The government has the burden of establishing harmlessness beyond a reasonable doubt." Id.

The plain-error standard consists of four requirements: (1) there must be an error; (2) the error must be "clear or obvious"; (3) "the error must have affected the appellant's substantial rights"; and (4) this Court must decide in its discretion to correct the error because it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

### B. Agent Strickland's Expert Qualification Was Inadequate

Federal Rule of Evidence 702 requires that an expert witness be qualified "by knowledge, skill, experience, training, or education." The district court has a gatekeeping obligation to ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Law enforcement agents may permissibly offer expert opinions about drug trafficking practices, but only after an adequate showing of specific expertise. *United States v. Casilla*, 20 F.3d 600, 604 (5th Cir. 1994).

Agent Strickland testified that he has been with the FBI for just over five years and has been on the violent gang task force for that entire period. ROA.991. He offered no testimony about prior drug cases he had investigated, drug prosecutions he had assisted in developing, specialized training in drug transaction recognition, or prior

qualification as an expert in any court. In contrast, precedents approving law enforcement drug expert testimony have involved agents with substantial and specific experience. *See United States v. Belanger,* 890 F.3d 13, 25 (1st Cir. 2018)(agent with 16 years' experience in drug investigations). Agent Strickland's generalist five-year FBI career does not demonstrate the particularized expertise required for expert opinion testimony on the meaning of observed behavior.

Yet, his testimony frequently delved into opinion. Crucially, he claimed he observed behavior consistent with drug dealing while not actually observing drug dealing. ROA.1016. Here, Agent Strickland repeatedly testified that what he observed on the surveillance video "was indicative of illegal narcotic sales" and that visits of short duration by individuals who went around the side of the house were consistent with drug transactions. ROA.999-1001. These characterizations went directly to the ultimate issue of guilt and crossed from permissible practice-pattern testimony into improper opinion on the ultimate legal question. See ROA.979, ROA.1239. See also ROA.1016, ROA.1044, ROA.1046, and ROA.1050.

### C. Strickland Improperly Characterized Unobserved Events as Drug Sales

Even qualified drug experts may not offer opinions that amount to legal conclusions — i.e., that conduct constitutes a crime. FRE 704; *United States v. Oti*, 872 F.3d 678, 691 (5th Cir. 2017)(an expert witness is not permitted to offer conclusions of law.)

Strickland opined about what was happening off-camera — i.e., events he never saw. His "expert" opinion was thus not opinion at all but speculation. A law enforcement officer may explain, based on experience, what common drug trafficking behavior looks like. But he may not testify that unseen, unrecorded, and unwitnessed activity was, in his opinion, a drug sale. Such testimony is the functional equivalent of the agent testifying: "I believe the defendant committed the crime charged." This Court condemned exactly that form of opinion testimony in *Casilla*, 20 F.3d at 606.

The error was not harmless. Strickland was the Government's primary witness. His characterizations of the surveillance footage as depicting drug trafficking were the linchpin of the Government's constructive possession theory. Without his impermissible opinions, there was no evidence of drug transactions at the Tulip Street property.

**D. Strickland's testimony violated Rule 701 of the Federal Rules of Evidence.**

An investigating officer has some latitude in offering expert and lay testimony, but it is not boundless. Federal Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

"[L]ay opinion testimony is permitted under Rule 701 because it has the effect of describing something *that the jurors could not otherwise experience for themselves* by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event." *United States v. Haines*, 803 F.3d 713, 733 (5th Cir. 2015) (citing *United States v. Freeman,* 730 F.3d 590, 595 (6th Cir.2013) (emphasis added) (citation omitted). Testimony on topics that the jury is fully capable of determining for itself is not "helpful to clearly understanding the witness's testimony," Fed.R.Evid. 701, and therefore is inadmissible under Rule 701. *Haines*, 803 F.3d at 733. But lay opinion testimony is admissible only if it does not require a great "leap of logic" and draws "straightforward conclusions from observations" informed by the witness's experience. *United States v. Masha*, 990 F.3d 436, 445 (5th Cir. 2021).

Rule 701 requires that lay opinion testimony "must be based on personal perception [and] must be [an opinion] that a normal person would form from those perceptions.'" *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997). The "traditional objective" of the rule is to afford the trier of fact "an accurate reproduction of the event" at issue. Fed. R. Evid., Advisory Committee Notes on 1972 Proposed Rules. As the Second Circuit has explained: "Rule 701 represents no departure from Fed. R. Evid. 602: 'A witness may not testify to a matter until evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter.'"

*United States v. Garcia*, 413 F.3d 201, 211 (2nd Cir. 2005). Moreover, "[t]estimony on topics that the jury is fully capable of determining for itself is not "helpful to clearly understanding the witness's testimony," Fed. R. Evid. 701, and therefore is inadmissible under Rule 701." *United States v. Haines*, 803 F.3d 713, 733 (5th Cir. 2015). Further, "when an agent relies on the 'entirety' or "totality' of information gathered in an investigation to offer a 'lay opinion,'" that exceeds the proper bounds of Rule 701. *Garcia*, 413 F.3d at 212. Thus, in *Garcia*, the court rejected the government's argument that its agent could opine on the defendant's role in the charged conspiracy because that opinion was not based merely on what he personally perceived, but instead was based on the totality of the investigation. *Id*. at 213. His testimony "was not limited to a summary of his own observations," in violation of Rule 701. *Id*.

In *Haines,* the agent's testimony interpreting the wiretapped phone calls frequently failed to distinguish between his opinion testimony based on his years of experience investigating drug crimes and his fact testimony based on his knowledge of the particular conspiracy at issue in the case, which "le[ft] the jury to wonder who was testifying, [Lockhart]-the-expert or [Lockhart]-the-case-agent." *Id.*at 732 *citing United States v. York,* 572 F.3d 415, 426 (7th Cir. 2009)(finding opinion evidence admitted in error). The agent was presented to the jury "with an aura of expertise and authority," which increased the risk that his testimony would improperly sway the jury.

*Id.* at 734. This Court explained that "[t]his testimony was admitted in error because it went beyond [the agent's] expertise and personal knowledge of the investigation and instead ventured into speculation, usurping the jury's function, which is to draw its own inferences from the evidence presented." *Id.*

Strickland was not proffered as an expert, and the scope of his testimony essentially opining what a drug scene looks like, exceeded what is allowable under Rule 701. *Haines*, 803 F.3d at 734 ("This testimony was admitted in error because it went beyond Lockhart's expertise and personal knowledge of the investigation and instead ventured into speculation, usurping the jury's function, which is to draw its own inferences from the evidence presented."). Strickland also oversold his ability to identify the satchel at issue. ROA.1085. This opinion was crucial because it convinced the jury of Keys' possession of the narcotics in the absence of actual footage of hand to hand transactions. Keys did not receive a fair trial as a result of this inadmissible evidence.

## IV. THE PROSECUTION'S CLOSING ARGUMENT CONTAINED IMPROPER AND PREJUDICIAL REMARKS.

### A. Standard of Review

Prosecutorial misconduct in closing argument is reviewed for whether the remarks were improper and, if so, whether they prejudicially affected the defendant's substantial rights. *United States v. Garcia*, 995 F .2d 556, 561 (5th Cir. 1993). Where

objection was made or the conduct is plain error, the Court examines whether the misconduct substantially affected the jury's verdict. *United States v. Delgado*, 672 F.3d 320, 336 (5th Cir. 2012).

In considering whether prosecutorial misconduct warrants reversal, the "determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *Delgado*, 672 F.3d at 334–35. Overturning a jury verdict for prosecutorial misconduct is appropriate only when, "taken as a whole in the context of the entire case," the prosecutor's comments "prejudicially affect[ed the] substantial rights of the defendant." *Id.* at 337.

"Improper comments by a prosecutor may constitute reversible error where the defendant's right to a fair trial is substantially affected." *United States v. Anchondo-Sandoval*, 910 F.2d 1234, 1237 (5th Cir. 1990). This Court applies a two step analysis to claims of this brand of error. *United States v. Beaulieu*, 973 F.3d 354, 360 (5th Cir. 2020). First, this Court assesses whether "the prosecutor made an improper remark." *Id*. If so, this Court then asks whether the defendant was prejudiced. *Id*. When trial counsel did not object to the prosecution's improper remarks, the appellant must also meet the plain error standard of review, demonstrating clear or obvious error that affected his substantial rights and seriously affected the fairness, integrity or reputation of judicial proceedings. See *United States v. Bolton*, 908 F.3d 75, 94 (5th Cir. 2018).

**B. Specific Improper Remarks**

The Government's closing argument included several categories of improper argument. First, the Government vouched for evidence which was not in the record. The prosecutor repeatedly suggested to the jury that it should infer from the unseen, off-camera side of the house that drug transactions were occurring — not based on any testimony about what was happening there, but as the prosecutor's own characterization. ROA.1267-1268. Suggesting that something took place based on nothing more than the Government's belief is the functional equivalent of the prosecutor testifying to facts not in evidence.

Secondly, the Government mischaracterized fingerprint and DNA evidence. The prosecutor stated in rebuttal closing that DNA was "a time-tested method of establishing possession." ROA.1262. This characterization was materially misleading. The DNA analyst's actual testimony was that an "inclusion" means only that the defendant cannot be excluded as a potential contributor — it is not a positive identification. Multiple profiles were present on the weapons. Characterizing this inconclusive result as "time-tested" proof of possession misstated the evidence.

Third, prosecutor's closing remarked that "whether defense counsel was able to see [the satchel video] again is of no moment." ROA.1269. This argument was designed to minimize the defense's cross-examination by suggesting that defense

counsel's inability to access a specific exhibit was irrelevant — an implicit attack on the integrity of the defense rather than an argument about the evidence.

Fourth, the Government repeatedly vouched for Agent Strickland's credibility. ROA.1270. As this Court has explained:

> A criminal trial provides a neutral arena for the presentation of evidence upon which alone the jury must base its determination of a defendant's innocence or guilt. Attorneys for both sides, following rules of evidence and procedure designed to protect the neutrality and fairness of the trial, must stage their versions of the truth within that arena. . . . [T]hose things that cannot properly be presented must not be considered at all. *United States v. Garza*, 608 F.2d 659, 662 (5th Cir. 1979).

Additionally, though, "[t]he power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says." *Garza*, 608 F.2d at 663. In other words, juries are more likely to credit what prosecutors say because they are prosecutors. *See Hall v. United States*, 419 F.2d 582, 583 (5th Cir. 1969). Relatedly, this Court long has held—and it is clear and obvious—that a prosecutor may never "suggest that evidence which was not presented at trial provides additional grounds for finding defendant guilty." *Garza*, 608 F.2d at 663. Thus, a prosecutor is strictly prohibited from "assur[ing] the jury that he has much more evidence than he produced at trial." Charles L. Cantrell, Prosecutorial Misconduct: Recognizing Errors in Closing

Argument, 26 Am. J. Trial Advoc. 535, 548 (2003).[4] At closing, the Government leaned heavily on what was off camera and in doing so deprived Mr. Keys of a fair trial.

## V. THE 922(G)(1) CONVICTION IS UNCONSTITUTIONAL UNDER THE SECOND AMENDMENT AND THE COMMERCE CLAUSE.

### A. Standard of Review

Mr. Key's § 922(g)(1) conviction is unconstitutional under the Second Amendment and the Commerce Clause**.** This Court's review of his challenge is reviewed for plain error, *United States v. Toure*, 965 F.3d 393, 399 (5th Cir. 2020).

### B. Second Amendment Challenge

Under *United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025), a person with a prior narcotics distribution conviction can be constitutionally disarmed pursuant to a historical tradition of disarming classes of dangerous people. 142 F.4th at 318. In doing so, however, *Kimble* deviated from the framework laid out in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024). Instead, *Kimble* relied on historical sources that had

---

[4] *See also, e.g., United States v. Ramirez-Velasquez*, 322 F.3d 868, 874 (5th Cir. 2023)("Equally harmful is the implication that the prosecutor has reached a conclusion based on facts not in evidence."); *U.S. v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978)("This Court has repeatedly held . . . that an attorney may not say anything to the jury implying that evidence supporting the attorney's position exists but has not been introduced in the trial."). Just as "an attorney may not express his personal opinion concerning the merits of the case." *Morris*, 568 F.2d at 401; *see also United States v. Young*, 470 U.S. 1, 18-19 (1985). It is also highly improper for prosecutors to "vouch for" or "bolster" the credibility of its witnesses— especially law enforcement officers—in closing arguments. *Id.*; *see also, e.g., United States v. Rodriguez-Leon*, 756 F.3d 422, 433 (5th Cir. 2014) ("We have repeatedly chastised federal prosecutors for making improper remarks in closing arguments— for example, for 'bolstering' federal agents' credibility in closing arguments[.]"); *United States v. Bowen*, 818 F.3d 179, 191 (5th Cir. 2016) (same).

already been rejected by the Supreme Court and this Court in *United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024). Accordingly, Mr. Keys respectfully urges that *Kimble* is not controlling under the rule of orderliness, and, in any event, was wrongly decided. Thus, his conviction should be reversed.

### C. Commerce Clause challenge

Recognizing that the issue currently is foreclosed by circuit precedent, Mr. Keys also raises to preserve for further review that § 922(g)(1) violates the Commerce Clause, both facially and as applied. *See United States v. Seekins*, No. 21-10556, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022) (unpublished) (summarizing precedent). Numerous judges of this Court have recently called for reconsidering this Court's precedent. *Seekins*, 52 F.4th at 991 (Ho, J., dissenting from denial of rehearing en banc); *United States v. Bonner*, 159 F.4th 338 (5th Cir. 2025) (Willett and Duncan, JJ., concurring). These opinions correctly recognize that this Court's prior precedent treating *Scarborough v. United States*[5] as a constitutional decision is irreconcilable with the Supreme Court's post-Lopez Commerce Clause jurisprudence. Thus, Mr. Key's § 922(g) conviction should be reversed.

[5] Holding that only a "minimal nexus that the firearm have been, at some time, in interstate commerce" is required, 431 U.S. 563, 575 (1977)

## VI. THE STATE DRUG PREDICATES CANNOT SUPPORT AN ACCA ENHANCEMENT BECAUSE LOUISIANA'S PRE-2015 R.S. 40:967 COCAINE OFFENSES ARE NOT "SERIOUS DRUG OFFENSES" UNDER FEDERAL LAW.

### A. Standard of Review

The application of the Armed Career Criminal Act is a question of law reviewed de novo. Whether a prior conviction qualifies as a predicate offense under the categorical approach is likewise reviewed de novo. *Mathis v. United States*, 579 U.S. 500, 505 (2016).

### B. *Brown v. United States* Requires Categorical Analysis of State Drug Schedules

The ACCA imposes a mandatory minimum 15-year sentence when a defendant convicted under § 922(g) has three prior convictions for a "serious drug offense," defined in relevant part as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

In *Brown v. United States*, 602 U.S. 101 (2024), the Supreme Court held that whether a prior state conviction qualifies as an ACCA serious drug offense requires comparing the state controlled substance schedule to the federal schedule at the time

of the prior conviction, using the categorical approach. A state offense does not qualify if the state's drug schedule is broader than the federal schedule — i.e., if the state criminalizes substances not covered by the federal Controlled Substances Act. *Shular v. United States*, 589 U.S. 154, 158, 140 S.Ct. 779, 206 L.Ed.2d 81 (2020). The Fifth Circuit has recognized that "the CSA's definition of 'controlled substance' in place at the time of sentencing for the instant offense" is the "proper comparison" for determining whether a Defendant's predicate convictions constitute "'controlled substance offenses' under the career-offender enhancement." *United States v. Minor*, 121 F.4th 1085, 1093 (5th Cir. 2024). See also *United States v. Jackson*, 55 F.4th 846, 855 (11th Cir. 2022), *aff'd sub nom. Brown v. United States*, 602 U.S. 101, 144 S. Ct. 1195, 218 L. Ed. 2d 583 (2024)(noting "in 2017, when Jackson possessed the firearm that resulted in his federal conviction under 18 U.S.C. § 922(g)(1) here, ioflupane was not a controlled substance "as defined ... [under] the Controlled Substances Act," *Id.* §924(e)(2)(A)(ii).).

*United States v. Williams*, 48 F.4th 1125, 1142 (10th Cir. 2022) offers important considerations in that:

> "Sentencing provisions must give ordinary people fair notice of the consequences of violating a criminal statute. *See Johnson v. United States*, 576 U.S. 591, 595-96, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015); *United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). Although typically attendant to vagueness challenges, fair-notice considerations must also 'apply with at least as much force when a statute does unambiguously delineate the conduct that violates it, and the defendant's conduct does not satisfy that

> standard.' *Jackson*, 36 F.4th at 1300. Here, the plain language of the federal statutes in effect at the time of Mr. Williams' federal offense indicates that he is not an armed career criminal because his prior offenses are categorically overbroad. Enhancing Mr. Williams' sentence based on a conflicting definition that predates his federal offense would deprive him of fair notice of the consequences of violating federal law. Thus, he must be sentenced according to the federal definition of 'controlled substance' in effect at the time of his federal offense, as expressly referenced in the ACCA."

Additionally, *United States v. Perez*, 46 F.4th 691, 700 (8th Cir. 2022) held "the categorical approach requires comparison of the state drug schedule at the time of the prior state offense to the federal schedule at the time of the federal offense." Therefore, because "Perez's state statute of conviction included Ioflupane whereas the CSA specifically excludes Ioflupane as a controlled substance, the state statute is overbroad on its face, and our categorical analysis ends with the text of the statute" and as such "Perez's prior offenses are not serious drug offenses under the ACCA, and the district court erred by sentencing Perez as an armed career criminal." *Id.* at 701.

Louisiana Revised Statute 40:967 governs cocaine offenses. Prior to 2015, Louisiana's definition of cocaine tracked the federal definition. However, following Louisiana's 2015 and 2016 amendments to its Controlled Dangerous Substances Act, Louisiana's schedules came to include substances not classified under the federal CSA — including certain isomers and analogue substances within the cocaine family that federal law treats differently. In a Guidelines analysis, *United States v. Steele*, No. CR 22-195, 2024 WL 1877072, at *1 (E.D. La. Apr. 23, 2024) observed that prior to 2016 both the Louisiana and federal definitions of "cocaine" included the cocaine-derivative

substance Ioflupane. The Court noted that presently both the Louisiana and the CSA definitions of "cocaine" exclude Ioflupane. *Id.* Accordingly, since the prior convictions occurred when the Louisiana statute included a "facially, categorically broader" than the current version of the federal CSA, the Court determined the Louisiana cocaine conviction should not be considered "controlled substance offense" for the Guideline analysis and sentence enhancement. *Id.*

By the same logic, Keys contends that his three prior Louisiana cocaine convictions should not serve as predicate ACCA serious drug offenses. At the time of those convictions Louisiana's definition of cocaine was broader than the present CSA definition of cocaine.

Keys acknowledges that *Brown* resolved a conflict in the circuits on the point of "whether a state crime constitutes a 'serious drug offense' [that qualifies as a predicate offense under the Armed Career Criminal Act (ACCA)] if it involved a drug that was on the federal schedules when the defendant possessed or trafficked in it but was later removed" by holding the crime qualifies if the state and federal definitions "matched" at the time of the prior offense. 602 U.S. at 103.

Nonetheless, Keys maintains that only approach which preserves his constitutional safeguards is that espoused by the *Perez* and *Williams* courts. Giving Keys the benefit of fair notice, the plain language of the federal statutes in effect at the time of his federal offense indicates that he is not an armed career criminal because his

prior offenses are categorically overbroad. "[T]he rule of lenity applies when a court employs all of the traditional tools of statutory interpretation and, after doing so, concludes that the statute still remains grievously ambiguous, meaning that the court can make no more than a guess as to what the statute means." *Shular v. United States*, 140 S. Ct. 779, 789, 206 L.Ed.2d 81 (2020) (Kavanaugh, J., concurring).

The three convictions used as ACCA predicates here were: (1) Case 387-118 — offense date October 30, 1996; (2) Case 401-464 — offense date July 29, 1998; and (3) Case 501-529 — offense date October 26, 2010. All three predate the 2015-16 Louisiana amendments. This creates a significant legal issue that flows from Brown in a different direction: because the categorical approach looks to the statute of conviction as it existed at the time of the prior offense, courts must satisfy themselves that the state statute in force at the time of conviction — not a later version — matches the federal definition. If there is any meaningful argument that even the pre-2015 Louisiana cocaine statute swept more broadly than federal law at those particular times, the convictions cannot serve as predicates.[6]

Recognizing that the issue currently is foreclosed by circuit precedent, Mr. Keys raises this issue to preserve for further review and additionally raises the issue that a

[6] Although the argument was preserved by inclusion in the Motion for Downward Departure, Appellant further contests the trial court's finding that his Rule 12 motion was untimely. See Memorandum in Support of Motion to Dismiss Sentencing Allegation and authorities cited therein. ROA.566-567.

double jeopardy issue exists. The constitutional prohibition against ‘double jeopardy’ was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. *Green v. United States*, 355 U.S. 184, 187, 78 S. Ct. 221, 223, 2 L. Ed. 2d 199 (1957). Mr. Keys contends that by virtue of the fact the he has already received an enhanced sentence for the “predicate” state drug offenses as a habitual offender and is now effectively being sentenced once more on these past crimes the double jeopardy clause is violated.

## VII. THE BIFURCATED JURY PROCEDURE FOR DETERMINING ACCA PREDICATES WAS NOVEL, LEGALLY SUSPECT, AND PREJUDICIAL.

### A. Description of the Procedure

After the jury returned its verdicts on Counts 1, 2, and 3 of the superseding indictment, the District Court retained the jury — without dismissal or any reset — and immediately convened what the Court called "Phase II." ROA.1308-1312. In Phase II, the same jury was asked to determine, beyond a reasonable doubt, whether Mr. Keys had three prior serious drug offense convictions qualifying as ACCA predicates. The jury heard additional evidence, received additional instructions, and returned a Phase II verdict. ROA.1372.

### B. The Procedure Raises Significant Constitutional Concerns

Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any fact other than a prior conviction that increases a defendant's sentence beyond the statutory maximum must

be found by a jury beyond a reasonable doubt. The ACCA's prior conviction exception — sometimes called the *Almendarez-Torres* carve-out — provides that the fact of a prior conviction itself may be found by a judge at sentencing. *Almendarez-Torres v. United States*, 523 U.S. 224 (1998).

The procedure used here — submitting the prior conviction findings to the jury was structurally prejudicial. The jury that was just told, in Phase I, that Mr. Keys was a convicted felon who possessed firearms (Count 3) was then presented with evidence of his three prior cocaine convictions in Phase II. That jury — having just convicted the defendant — was virtually certain to find that he had the prior convictions. The sequential presentation maximized prejudice.

Second, the bifurcation itself suggests confusion over whether the prior conviction elements are properly jury questions at all. The Government and the Court treated them as jury questions in Phase II, but *Almendarez-Torres* contemplates judicial fact-finding. If prior convictions are jury questions under this procedure, then the *Apprendi* framework applies fully, including all of its procedural protections. If they are judicial questions, then the Phase II proceeding was constitutionally superfluous.

Mr. Keys respectfully asks this Court to address the constitutional and procedural propriety of this novel bifurcation mechanism, which, if approved without limitation, could become a template for similar proceedings in this Circuit. Mr. Keys acknowledges *Erlinger v. United States,* 602 U.S. 821, 890, 144 S. Ct. 1840, 1884, 219

L. Ed. 2d 451 (2024) wherein the Supreme Court seemingly reconciled *Apprendi* and *Almendarez-Torres* in the ACCA setting and condoned the use of bifurcated trials. But, as the dissent in that case points out, even if a proceeding were to be bifurcated, the jury would still be required to consider a defendant's story in light of his criminality so that some prejudice is inevitable. *Id.* at 1886 (Jackson, J., dissenting). Moreover, juries are shown "live witnesses" over "cold records" because one has more value to a jury's findings than the other, and the bifurcated process subverts that principle when the jury will be asked about the facts of convictions from years prior without any real direct, cross, and redirect examination. *Id.* at 1887 (Jackson, J., dissenting). Mr. Keys's Phase II verdict should be overturned.

## VIII. IMPROPER EVIDENCE WAS ADMITTED AT PHASE TWO AND WAS INSUFFICIENT TO SUPPORT THE VERDICT .

### A. Standard of Review

This Court reviews de novo the denial of a Rule 29 motion for acquittal. *United States v. Taylor*, 482 F.3d 315, 318 (5th Cir. 2007). ROA.1364-1365. *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) provides that the evidentiary rulings are reviewed for an abuse of discretion.

### B. Admission of the Phase II Conviction Packet Evidence Over Foundation and Hearsay Objection

Defense counsel objected at each step of Phase II to the admission of the government's certified conviction packets (Government's Exhibits 20, 21, 22A, 22B, 23, and 26) on grounds of lack of proper foundation, hearsay, and failure to authenticate. ROA.1339, ROA.1349, and ROA.1351. The District Court was in error to overrule each objection under Rules 602, 802, and 901 of the Federal Rules of Evidence. ROA.1340, ROA.1349, ROA.1352.

The Government's principal method of connecting Mr. Keys to the 1999 conviction (Case 401-464) was not fingerprints — it was the presence of an FBI number. ROA.1337-1338. The witness Olivotto acknowledged he had no personal knowledge of the prior prosecutions, was not present at any of them, and could not verify the circumstances of the prior convictions beyond what appeared in the documents. ROA.1359-1360. Using an FBI number as the sole identifier for one of three required ACCA predicates, without fingerprint corroboration and over authentication objection, was also error. Finding for the Government on the issue of three prior convictions on different occasions was improper based on the evidence presented and should be overturned.

## IX. THE SENTENCE WAS IMPROPER

### A. Standard of Review

A trial court has broad discretion in passing sentence. Nevertheless, "a defendant retains the right not to be sentenced on the basis of invalid premises." *United States v. Espinoza*, 481 F.2d 553, 555 (5th Cir. 1973). Sentences based upon erroneous and material information or assumptions violate due process. *United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. 1981). The proper remedy where a trial court relies upon erroneous information or assumptions is to remand to the district court for a new sentencing hearing. *Id*. The appellant has the initial burden of demonstrating that the court relied upon assumptions or misinformation during sentencing. *United States v. Tobias*, 662 F.2d 381, 409 (5th Cir. 1980). The standard of review is abuse of discretion. *Id*. at 411.

### B. The Court's Sentence of 300 months was excessive

Although presumptively reasonable, a sentence imposed within the guidelines is not reasonable per se. *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006). The sentencing court should take care that a defendant's sentence is not unreasonably disparate from co-defendants. *See United States v. Candia*, 454 F.3d 468 (5th Cir. 2006). Furthermore, 18 U.S. Code §3553 provides that the sentencing court shall consider the sentences of co-defendants to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. Section

3553(a)(6). Unreasonable sentences are also reviewed under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 39 (2007).

Numerous abuses exist in the excessive sentence handed to Mr. Keys. The trial judge gave him a sentence of 300 months which is entirely too harsh. The defense submitted that any sentence that does not include a downward departure/variance from the guideline range is "greater than necessary" to comply with the purposes of 18 U.S.C. § 3553. The Court rejected the argument that a life sentence, essentially, for conspiracy to distribute drugs in the quantities at issue in this case is highly inappropriate. The Sentencing Commission has acknowledged that when career offender status is based upon relatively minor drug offenses, the guidelines may create a sentence greater than necessary. *United States v. Fernandez*, 436 F.Supp.2d 983, 989 (E.D.Wis.2006). A downward adjustment was entirely appropriate.

Other problems exist as to the sentence imposed. Mr. Keys urges that at his arraignment he was apprised that he could receive no more than fifteen years under the section 922(g) sentence and not more than 20 in the narcotics charge but instead received a 25 year sentence. ROA.844. The sentence is also faulty because originally the judge imposed only a 15 year sentence for the felon in possession charge albeit to run consecutively with the section 841 conviction. He then reconsidered and sentenced to 240 months on count one and 300 months on count 3 to run concurrently.

Counsel timely objected to the unreasonableness of the sentence imposed.

Appellant requests he be remanded for resentencing so that he may have a sentence more in line with justice. A downward adjustment should have been granted as urged. ROA.614-632. Appellant should be entitled to a new sentencing hearing.

**X. CUMULATIVE ERROR DEPRIVED MR. KEYS OF A FAIR TRIAL.**

Even if no single error requires reversal standing alone, this Court may reverse for cumulative error when the errors have a substantial and injurious effect on the jury's verdict. Under the cumulative error doctrine, an aggregation of non-reversible errors can result in a denial of the constitutional right to a fair trial. *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012). Reversal follows when the errors "so fatally infect the trial that they violated the trial's fundamental fairness." *Id.* at 344.

Here, the cumulative errors are:

(1) A search warrant supported by a fatally flawed affidavit, enabling the government to introduce all physical evidence;

(2) No observed hand-to-hand transactions despite 17 days of continuous surveillance;

(3) Insufficient direct or circumstantial evidence to establish constructive possession of the drugs or the firearms;

(4) An unqualified and improper drug expert whose opinion testimony was the only inferential basis for the drug trafficking theory;

(5) Prejudicial and unfounded prosecution closing remarks;

(6) Admission of the Phase II conviction evidence over valid foundation objections;

(7) A novel and legally unprecedented bifurcated Phase II proceeding in which the same guilt-phase jury was exposed to Mr. Keys's three prior drug convictions;

(8) An unresolved legal challenge to the validity of Louisiana cocaine predicates under *Brown v. United States*.

Each of these errors contributed to what was, in sum, a trial that looked like a conviction in search of a theory rather than a theory supported by evidence. The jury's acquittal on Count 2 — the § 924(c) count — demonstrates that the jury was not a rubber stamp and that the evidence on at least one count was insufficient. The Counts 1 and 3 convictions, infected by all of the above errors, should not stand.

## CONCLUSION AND PRAYER

For these reasons, appellant Charles Ray Keys urges that his convictions should be reversed, and a judgment of acquittal entered as to each Count of the amended superseding indictment, or, in the alternative, the case remanded for a new trial or sentencing, with instructions for proceedings consistent with this Court's opinion.

For all of the foregoing reasons, Appellant Charles Ray Keys respectfully requests that this Court:

(1) Reverse the convictions on Counts 1 and 3 and render a judgment of acquittal, on the ground that the suppression motion should have been granted and, independently, on the ground that the evidence was insufficient to support the verdicts; or, in the alternative,

(2) Reverse and remand for a new trial, based on the improper admission of Agent Strickland's unqualified expert testimony and the prejudicial prosecutorial closing remarks; and

(3) Vacate the ACCA enhancement and remand for resentencing without it, or for a determination in the first instance of whether pre-2015 Louisiana R.S. 40:967 cocaine convictions qualify as "serious drug offenses" under *Brown v. United States*; and

(4) Address the constitutionality and propriety of the bifurcated Phase II jury procedure employed below.

Respectfully Submitted,
**COUHIG PARTNERS, LLC**

*<u>/s/ Jonathan P. Lemann</u>*
Jonathan P. Lemann, #26380
1100 Poydras Street, Suite 3250
New Orleans, Louisiana 70163
Phone (504) 588-1288
Telecopier (504) 588-9750
<u>lemannjp@couhigpartners.com</u>

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to Sarah Dawkins, Assistant U.S. Attorney, and all counsel of record.

*/s/ Jonathan P. Lemann*
Jonathan P. Lemann

## CERTIFICATE OF COMPLIANCE

Pursuant to the Fifth Circuit Rule 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of the Fifth Circuit Rule 32.2.7(b).

1. Exclusive of the exempted portions provided for in the Fifth Circuit Rule 32.2.7(b), the brief contains 10,942 words from Statement of Jurisdiction on page I to Respectfully submitted on page 51 of the brief. The Brief was prepared in proportionally spaced typeface using Microsoft Word and Times New Roman 14 point font. If the Court so requests, the Undersigned will provide an electronic version of the brief and/or copy of the word or line printout.
2. The Undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in the Fifth Circuit Rule 32.2.7, may result in the Court's striking the brief and imposing sanctions.

**COUHIG PARTNERS, LLC**

*/s/ Jonathan P. Lemann*
Jonathan P. Lemann, #26380
1100 Poydras Street, Suite 3250
New Orleans, Louisiana 70163
Phone (504) 588-1288
Telecopier (504) 588-9750
lemannjp@couhigpartners.com